IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

JON ERIC BANDY                                                           PLAINTIFF

V.                                          NO. 15-5072

CAROLYN W. COLVIN,
Acting Commissioner of the Social Security Administration          DEFENDANT

### MEMORANDUM OPINION

Plaintiff, Jon Eric Bandy, brings this action pursuant to 42 U.S.C. §405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying his claims for a period of disability and disability insurance benefits (DIB) and supplemental security income (SSI) under the provisions of Titles II and XVI of the Social Security Act (Act).  In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. §405(g).

I.      **Procedural Background:**

Plaintiff protectively filed his applications for DIB and SSI on October 13, 2011, alleging an inability to work since September 24, 2011, due to seizures, learning disability, memory problems, headaches, and right shoulder problems. (Tr. 145-156, 181, 185). An administrative hearing was held on February 28, 2013, at which Plaintiff appeared with his fiancé and counsel, and he and his fiancé testified. (Tr. 51-75).

By written decision dated September 6, 2013, the ALJ found that during the relevant time period, Plaintiff had an impairment or combination of impairments that were severe –

1

seizure disorder. (Tr. 13). However, after reviewing all of the evidence presented,  the ALJ

determined that Plaintiff's impairments did not meet or equal the level of severity of any

impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation

No. 4. (Tr. 14). The ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c)
> except he can frequently climb stairs and ramps, balance, crawl, kneel, stoop,
> and crouch, but he can never climb ropes and ladders. He can occasionally
> tolerate humidity, temperature extremes, pulmonary irritants, and vibrations.
> The claimant must avoid unprotected heights and moving machinery, and he
> cannot operate a moving vehicle.

(Tr. 14). With the help of the vocational expert (VE), the ALJ determined that during the

relevant time period, Plaintiff would be able to perform his past relevant work as a fast food

worker. (Tr. 21).

Plaintiff then requested a review of the hearing decision by the Appeals Council,

which denied that request on February 19, 2015. (Tr. 1-5). Subsequently, Plaintiff filed this

action. (Doc. 1). This case is before the undersigned pursuant to the consent of the parties.

(Doc. 5). Both parties have filed appeal briefs, and the case is now ready for decision. (Docs.

11, 12).

The Court has reviewed the entire transcript. The complete set of facts and arguments

are presented in the parties' briefs, and are repeated here only to the extent necessary.

**II.    Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported

by substantial evidence on the record as a whole.  Ramirez v. Barnhart, 292 F. 3d 576, 583

(8th Cir. 2002).  Substantial evidence is less than a preponderance but it is enough that a

reasonable mind would find it adequate to support the Commissioner's decision.  The ALJ's

decision must be affirmed if the record contains substantial evidence to support it.  Edwards

v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003).  As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently.  Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001).  In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed.  Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity.  Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A).  The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §§423(d)(3).  A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing his claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able

to perform other work in the national economy given his age, education, and experience.  See 20 C.F.R. §§ 404.1520; 416.920.  Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of his RFC.  See McCoy v. Schneider, 683 F.2d 1138, 1141-42 (8th Cir. 1982);  20 C.F.R. §§ 404.1520; 416.920.

### III.   Discussion:

Plaintiff raises the following issues in this matter: 1) Whether the ALJ erred in his RFC assessment; 2) Whether the ALJ erred in determining Plaintiff's impairments did not meet a listing; and 3) Whether the ALJ erred in his credibility analysis. (Doc. 11).

### A.  Listing:

Plaintiff argues that the ALJ erred by failing to properly evaluate Plaintiff's seizures under Listings 11.02 and 11.03. "The burden of proof is on the plaintiff to establish that his or her impairment meets or equals a listing." Johnson v. Barnhart, 390 F.3d 1067, 1070 (8th Cir. 2004). "To meet a listing, an impairment must meet all of the listing's specified criteria." Id.  "To establish equivalency, a claimant 'must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment.'" Carlson v. Astrue, 604 F.3d 589, 594 (8th Cir. 2010)(quoting from Sullivan v. Zebley, 493 U.S. 521, 531 (1990)).  "[W]hen determining medical equivalency, an impairment can be considered alone or in combination with other impairments." Carlson, 604 F.3d at 595.  The listings delineate impairments considered "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. §404.1525(a).

In his decision, the ALJ indicated that listed impairments related to neurological disorders found in Section 11.00 were specifically considered in making his decision. (Tr. 14).

As a preface to Listing 11.02 and 11.03, 11.00A provides, in pertinent part:

Under 11.02 and 11.03, the criteria can be applied only if the impairment persists despite the fact that the individual is following prescribed antiepileptic treatment. Adherence to prescribed antiepileptic therapy can ordinarily be determined from objective clinical findings in the report of the physician currently providing treatment for epilepsy….

Listings 11.02 and 11.03 provide as follows:

11.02 *Epilepsy – convulsive epilepsy, (grand mal or psychomotor), documented by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once a month in spite of at least 3 months of prescribed treatment*. With:

A. Daytime episodes (loss of consciousness and convulsive seizures) or

B. Nocturnal episodes manifesting residuals which interfere significantly with activity during the day.

11.03 *Epilepsy – nonconvulsive epilepsy (petit mal, psychomotor, or focal), documented by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once weekly in spite of at least 3 months of prescribed treatment.* With alteration of awareness or loss of consciousness and transient postictal manifestations of unconventional behavior or significant interference with activity during the day.

A review of the entire record indicates that after the alleged onset date (September 24, 2011), Plaintiff's treating physician, Dr. Kenneth Poemoceah, reported on October 10, 2011, that Plaintiff had not had a seizure for "about 2 months now." (Tr. 357). At that time, Dr. Poemoceah was going to get a Dilantin level. (Tr. 357). The next visit to Dr. Poemoceah occurred on November 4, 2011, when Dr. Poemoceah completed a "Treating Physician's Report for Seizure Disorder." (Tr. 347). In said form, Dr. Poemoceah indicated that Plaintiff suffered from generalized tonic clonic seizures two times per month, that the date of last

5

adjustment of medications was September 11, and that the number of seizures since the medication adjusted was one. (Tr. 347).  Plaintiff again saw Dr. Poemoceah on December 19, 2011, and January 10, 2012, only complaining of cough and congestion and a skin tag, respectively. (Tr. 379-380).

On January 16, 2012, non-examining consultant, Dr. Alice M. Davidson, completed a Physical RFC Assessment, wherein she found that no exertional limitations were established, and that Plaintiff should avoid even moderate exposure to hazards (machinery, heights, etc.). (Tr. 386, 389). This assessment was affirmed by Dr. Judith Forte on June 21, 2012. (Tr. 397). Plaintiff next presented to the Northwest Medical Center in Bentonville on February 16, 2012, and March 1, 2013, complaining of nausea, vomiting, diarrhea, and chest pain, respectively. (Tr. 580, 600).

On April 9, 2012, Plaintiff went to UAMS Family Medical Center to establish care and get refills on medications. He saw Dr. Lynn Wink. (Tr. 422). It was reported that Plaintiff was unable to return to Dr. Poemoceah, due to a standing balance with the office. (Tr. 422). Plaintiff was assessed with cervical radiculopathy, left; hypertension, benign essential; and seizure disorder. (Tr. 424).  Plaintiff was referred to neurology, but indicated he would not go to a neurologist. (Tr. 425).

On June 29, 2012, Plaintiff presented himself to Mercy Hospital Northwest, complaining of seizures. (Tr. 428). The hospital records indicate that his episode started less than one hour prior, and that there were two to three seizures, and that the most recent episode lasted less than 30 seconds. (Tr. 429). Possible causes included sleep deprivation.

6

(Tr. 429). At that time, Plaintiff reported he was taking Dilantin, and was not post itchal. (Tr. 435). Plaintiff reported having five seizures that day. (Tr. 435).

On July 19, 2012, Plaintiff presented to Dr. Leslie Stone to establish care. (Tr. 418). Plaintiff reported he had been having light seizures about three to four times a day. (Tr. 418). Plaintiff was diagnosed with benign hypertension; generalized convulsive epilepsy without mention of intractable epilepsy; tobacco use disorder, and obesity, nos. (Tr. 419).

In a Disability Report – Appeal, dated July 31, 2012, Plaintiff reported he was having more frequent seizures – about two to five a day. (Tr. 245, 248). On August 8, 2012, Plaintiff saw Dr. Marianela Lavena, stating that the last time he had a seizure was the day before, when he had three. (Tr. 412). Dr. Lavena reported that Dr. Stone had previously added Topamax  to his Dilantin dosage. (Tr. 412). At that time, Dr. Lavena reported that Plaintiff's hypertension was doing well on the medications. (Tr. 412). Plaintiff again saw Dr. Stone on August 9, 2012, stating that he had a few "absence-type seizures" after the last visit but no further generalized seizures. (Tr. 415). Plaintiff saw Dr. Lavena on September 25, 2012, and reported that his seizures were improving and he had no new episodes since his last visit. (Tr. 409). He was reported as "doing much better." (Tr. 409). When Plaintiff next saw Dr. Lavena on October 25, 2012, she reported that Plaintiff was doing well on medication, and he denied having any episodes of seizures since his last visit. (Tr. 402).

On January 16, 2013, Plaintiff saw Jennifer Jennings, APN, complaining of increased absence seizures two to three times a day for the previous three weeks. (Tr. 574). He reported they lasted two to three minutes and then resolved. He also reported he would have a seizure one to two times a month that occurred at night with convulsions. (Tr. 574). He was reported

7

as continuing to take Dilantin and Topiramate, and reported an increase in stress and anxiety. (Tr. 574).    On that same date, Jennifer Jennings, APN, completed a Seizure Residual Functional Capacity form. (Tr. 572). She reported that Plaintiff suffered from convulsive seizures more than once a month; non-convulsive seizures more than once a day; that his estimated degree of compliance with treatment was excellent, and that the side effect from medications was memory loss. (Tr.572).

After the hearing, on March 25, 2013, Plaintiff saw Dr. David D. Brown, D.O., of Mercy Clinic Lowell. (Tr. 716). Dr. Brown noted that Plaintiff also had a history of sleep apnea, but was not compliant with his CPAP. (Tr. 716). At that time, Plaintiff was started on Egretol 200 mg. tid, and on May 15, 2013, when Plaintiff again saw Dr. Brown, he reported that the seizure frequency was substantially improved, and that he had only two mild seizures and no generalized seizures since his last visit. (Tr. 716). Dr. Brown was going to consider weaning Plaintiff off of the Dilantin in the future. (Tr. 720).

On May 21, 2013, Dr. Ahmad Al-Khatib, a neurologist with Benton Neurocare, Inc., conducted a neurological evaluation and examination of Plaintiff at the request of the Social Security Administration. (Tr. 723). Plaintiff reported to Dr. Al-Khatib that the frequency of his spells was about one to two per month, and that the last similar spell was a month prior. (Tr. 723). Plaintiff also reported having episodes of poor responsiveness, staring into space, laps and memory, deju vu feeling and lip smacking about one to two per week, with the last spell occurring about a week prior. (Tr. 723). Dr. Khatib assessed Plaintiff with poorly controlled frequent seizure disorder manifesting as generalized tonic-clonic seizures and complex partial seizures. (Tr. 724). He recommended that Plaintiff be on seizure precautions, including: avoiding driving, operating machinery, swimming, heights or any dangerous

8

situation, should he have any breakthrough seizure activity. (Tr. 724). Dr. Khatib also completed a Medical Source Statement that same day, and concluded that Plaintiff could occasionally lift 51 to 100 pounds; frequently lift 21 to 50 pounds; continuously lift up to 20 pounds; carry 51 to 100 pounds occasionally and 20 to 50 pounds frequently; and up to 20 pounds continuously. (Tr. 725). He further found that Plaintiff could never climb ladders or scaffolds and could frequently climb stairs and ramps, balance, stoop, kneel, crouch, and crawl. (Tr.728). He found Plaintiff could never be exposed to unprotected heights, moving mechanical parts, or operate a motor vehicle. (Tr. 729). Finally, Dr. Khatib found Plaintiff could occasionally be exposed to humidity and wetness, dust, odors, fumes, and pulmonary irritants, extreme cold, extreme heat, vibrations, and noise. (Tr. 729).

On June 12, 2013, Plaintiff saw Dr. Brown, and told him that he had a seizure the day before his visit, and that he had "light" seizures four to five times per week. (Tr. 732). Dr. Brown reported that Plaintiff was on Dilantin, which "his wife" stated reduced the frequency of the events, and they were much worse if he missed doses. (Tr. 732).

On July 18, 2013, a record from Mercy Clinic Lowell indicates that Plaintiff had not had any seizures since his last visit, and was tolerating the dosing regimen of Tegretol and Dilantin. (Tr. 738).

The Court believes that the medical evidence contained in the record does not document Plaintiff's complaints that he was experiencing grand mal or psychomotor convulsive epilepsy more than once a month in spite of at least 3 months of prescribed treatment, with daytime episodes of loss of consciousness and convulsive seizures or nocturnal episodes manifesting residuals which interfere significantly with activity during the

9

day, as required under Listing 11.02. Nor does the medical evidence support the requirements of Listing 11.03. Plaintiff was able to perform his daily activities and was able to take care of his personal needs. (Tr. 202-205). In addition, in March of 2011, Plaintiff's supervisor stated that he could be "employed competitively" and "could work at any job on the outside." (Tr. 267, 270). Furthermore, at the hearing, Plaintiff testified that if he had a small seizure at work, "it don't affect me too much. I just have to just stop – it takes a minute to get back to work." (Tr. 68).

The Court finds that Plaintiff has failed to meet his burden of proving that his impairments meet Listings 11.02 or 11.03.

### B. Credibility Analysis:

Plaintiff argues that the ALJ erred in failing to perform the analysis provided in Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984), and in not providing specific rationale for rejecting Plaintiff's testimony. The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and (5) functional restrictions. See id. While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id. As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

In his decision, the ALJ stated that although Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, Plaintiff's statements concerning the intensity, persistence and limiting effects of the symptoms were not entirely credible. (Tr. 17). Although the ALJ did not cite to Polaski, or discuss every credibility factor in depth, the ALJ set forth good reasons for his credibility findings in his decision, including:  the fact that in July of 2011, Dr. Poemoceah noted Plaintiff had not been taking his medications as prescribed (Tr. 17); the fact that Plaintiff stated that he would not go to a neurologist (Tr. 18); the fact that in June of 2013, Plaintiff's neurological examination was normal (Tr. 19); the fact that once Plaintiff's medications were properly adjusted, his seizures became less frequent (Tr. 20); the fact that Plaintiff was able to perform his activities of daily living (Tr. 16); and the fact that a neurologist and two agency consultants supported the ALJ's RFC (Tr. 20). In addition, in his brief, even the Plaintiff acknowledges that in July of 2013, Dr. Brown "finally got Plaintiff's medications adjusted so that his seizures were properly controlled." (Doc. 11 at p. 15).

The Eighth Circuit has held that the ALJ does not need to explicitly discuss each Polaski factor, and that it is sufficient if he acknowledges and considers those factors before discounting Plaintiff's subjective complaints. Milam v. Colvin, 794 F.3d 978, 984 (8th Cir. 2015) (quoting Strongson v. Barnhart, 361 F.3d 1066, 1072 (8th Cir. 2004)(internal citations omitted).

Based upon the foregoing, the Court finds there is substantial evidence to support the ALJ's credibility analysis.

**C.  RFC Determination:**

11

Plaintiff argues that the ALJ failed to account for Plaintiff's absences and decreased productivity, his need for extra breaks in the RFC assessment, and that he erred with respect to Dr. Poemoceah's opinion and nurse Jennings' opinion. RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1).  It is assessed using all relevant evidence in the record. Id.  This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of his limitations.  Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment.  20 C.F.R. § 404.1545(a)(3).  The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question."  Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001).  Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace.  Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003).  "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC."  Id.  "The ALJ is permitted to base its RFC determination on 'a non-examining physician's opinion *and* other medical evidence in the record.'"  Barrows v. Colvin, No. C 13-4087-MWB, 2015 WL 1510159 at *15 (quoting from Willms v. Colvin, Civil No. 12-2871, 2013 WL 6230346 (D. Minn. Dec. 2, 2013).

With respect to weight given to the opinions of treating physicians, "[a] claimant's treating physician's opinion will generally be given controlling weight, but it must be supported by medically acceptable clinical and diagnostic techniques, and must be consistent with other substantial evidence in the record."  Andrews v. Colvin, No. 14-3012, 2015 WL 4032122 at *3 (8th Cir. July 2, 2015)(citing Cline v. Colvin, 771 F.3d 1098, 1102 (8th Cir.

2014).  "A treating physician's opinion may be discounted or entirely disregarded 'where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions.'" <u>Id.</u>  "In either case-whether granting a treating physician's opinion substantial or little weight-the Commissioner or the ALJ must give good reasons for the weight apportioned." <u>Id</u>

The ALJ considered all of Plaintiff's medical records as well as the opinions of his health care providers. As noted earlier, the records are very inconsistent with respect to the frequency of Plaintiff's seizures as well as the extent that such seizures affect Plaintiff's ability to perform work activity. By limiting Plaintiff to medium work with seizure precautions, the ALJ considered all of Plaintiff's symptoms.

The ALJ gave some weight to the opinion of Plaintiff's treating physician, Dr. Poemoceah, noting that the number of seizures had decreased with medication adjustment, with only one reported between September 2011 and November 2011. (Tr. 18). This statement is inconsistent with Dr. Poemoceah's opinion that Plaintiff would have generalized tonic clonic seizures twice a month despite medication adjustment. With respect to the opinion of Jennifer Jennings, APN, the ALJ gave it little weight, "as it does not seem to take into consideration that the claimant is working 30 hours a week at a relatively active job, in spite of alleged daily seizures." (Tr. 19). The Court also notes that Ms. Jennings is not an acceptable medical source, and although the ALJ did consider her opinion, he was justified in giving it little weight.

13

The ALJ gave great weight to the opinion of neurologist, Dr. Ahmad Al-Khatib, who opined that Plaintiff would be able to occasionally lift/carry up to 100 pounds, sit, stand, or walk for 8 hours in an 8 hour workday, frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, but never climb ladders or scaffolds. (Tr. 20). The ALJ found this opinion to be consistent with his RFC assessment. The regulations state that more weight is generally given to the opinion of a specialist about medical issues related to the area of specialty than to the opinion of a source who is not a specialist. 20 C.F.R. §404.1527(c)(5). The fact that Plaintiff was able to perform all of his activities of daily living and that one of his supervisors reported that he would be capable of working at any job on the outside supports the ALJ's RFC assessment.

Based upon the foregoing, the Court finds that the ALJ gave good reasons for the weight he gave to the various opinions, and that there is substantial evidence to support the ALJ's RFC determination.

### D.  Hypothetical Question to VE:

On July 20, 2013, the VE completed Vocational Interrogatories that were sent to him by the ALJ. (Tr. 302). In the interrogatories, the ALJ posed the following hypothetical question to the VE:

> #7. Assume a hypothetical individual who was born on December 14, 1966, has a limited education and is able to communicate in English as defined in 20 CFR 404.1564 and 416.964, and has work experience as described in your response to question #6. Assume further that this individual has the RFC to perform medium work as defined in 20 CFR 404.1567(c) except he can frequently climb stairs and ramps, balance, crawl, kneel, stoop, and crouch. He cannot climb ropes and ladders. He can occasionally tolerate humidity, temperature extremes, pulmonary irritants, and vibrations. He must avoid unprotected heights and moving machinery. He cannot operate a moving vehicle.

14

#8. Could the individual described in item #7 perform any of the claimant's past jobs as actually performed by the claimant or as normally performed in the national economy?

Yes: Fast food worker.

(Tr. 303).

After thoroughly reviewing the hearing transcript along with the entire evidence of record, the Court also finds that the hypothetical questions the ALJ posed to the VE fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005). Accordingly, the Court finds that the VE's opinion constitutes substantial evidence supporting the ALJ's conclusion that Plaintiff's impairments did not preclude him from performing his past relevant work as a fast food worker. Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996)(testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

**IV.    Conclusion**:

Accordingly, having carefully reviewed the record, the Court finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision is hereby affirmed. The Plaintiff's Complaint should be, and is hereby, dismissed with prejudice.

IT IS SO ORDERED this 1st day of April, 2016.

/s/ Erin L. Setser
HONORABLE ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

15